**LEEDS BROWN LAW, P.C.**
BRETT R. COHEN (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: 516.873.9550
Fax: 516-747-5024
Email: bcohen@leedsbrownlaw.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUDREY POTASE, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>INTEX RECREATION CORP., and any other related entities,<br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

# COMPLAINT

Plaintiff AUDREY POTASE ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant INTEX RECREATION CORP. and any other related entities ("Intex" or "Defendants").

## BACKGROUND

1. This class action seeks damages and equitable relief arising from Defendants' false and misleading representations regarding the safety of their products, including the Intex Clearview Prism Frame above ground swimming pool (collectively, "Products"). Defendants represented that the Products were safe and reliable, despite being aware that the design and manufacturing defects rendered them hazardous, particularly to families with young children. As a direct result of these misrepresentations, Plaintiff and Class Members purchased defective Products that failed to perform as advertised and posed a substantial risk of serious injury.

2. Intex is a wholly owned subsidiary California corporation of its parent company Intex Development Co. LTD., a private corporation headquartered in Wan Chai, Hong Kong with a "worldwide family of companies" that includes Intex Recreation Corp., founded in Los Angeles, California in 1965 and currently headquartered in Long Beach, California. Intex develops, manufactures, and sells recreational products, including above-ground pools, spas, inflatable furniture, air mattresses, water toys, and outdoor play equipment.[1]

3. Intex advertises to consumers as a provider of safe, high-quality products.[2] Its products are widely distributed across the United States through retail and online channels. Intex maintains control over its product design, manufacturing, and distribution processes, and thus, Intex bears responsibility for ensuring the safety of the products sold to individual consumers and families.

4. On their website, Intex represents that its objective is to deliver "the highest quality products at an affordable price, all designed for comfort, safety, and fun." Intex characterizes its

---

[1] https://Intexdevelopment.com/ (last accessed October 21, 2025)
[2] https://www.intexdevelopment.com/about-us-page?lst_lang=2 (last accessed October 21, 2025)

company's vision as "to be the most recognizable, trusted and innovative company in our industry" and that they "routinely test finished products to make sure they meet our elevated standards for quality, safety and value." [2]

5. Despite Intex's representations regarding the safety and quality of its products, they have failed and deceived their consumers by the selling and distributing of certain above-ground pools which have been determined to pose a significant risk to consumers.

6. On or around July 21, 2025, the U.S. Consumer Product Safety Commission (CSPC) announced a recall of approximately five million above-ground pools, 48 inches or taller, distributed by Intex and other manufacturers (hereinafter "the Recall"). The Recall was issued because the compression straps which are on the outside of the pool's vertical support beams could serve as footholds, allowing children to access the pools and substantially increasing the risk of drowning.[3]

7. As shown on their website, Intex represented which products were affected by the recall[4]:




---

[3] https://www.cpsc.gov/Recalls/2025/Intex-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002 (last accessed September 23, 2025)

[4] https://intexcorp.com/recall/ (last accessed October 3, 2025)

8. Such designs of the recalled above ground pools have resulted in the tragic deaths of nine children. As the CSPC Chairman, Peter A. Feldman, and CSPC Commissioner, Douglas Dziak, aptly articulated in a joint statement, "This is a textbook example of a dangerous design flaw, plainly visible and clearly hazardous. At least nine children aged 22 months to 3 years drowned as a direct result of this hazard… Years of inaction allowed these tragedies to occur."[5]

9. Specifically, the Products being recalled from Intex include the Intex Clearview Prism Frame above ground pools with support straps that run over the vertical poles (legs) of the Pool frame.

10. Consumers who purchased the Products learned through the recall notice that the Products posed a serious safety hazard requiring significant corrective action. To address the risks associated with the external compression straps, owners must invest substantial time and effort to obtain a repair kit and modify the straps accordingly. In addition, Plaintiff and all Class Members are required to drain all water from the Products before completing the repairs. These corrective measures impose considerable burdens on consumers and result in meaningful expenses.

11. Because the Products failed to perform as advertised and did not meet the reasonable expectations of consumers, those who purchased them suffered damages.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendants (including Plaintiff), and (4) there are more than 100 proposed Class members.

13. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves to the laws, rights, and benefits of the State of California.

---

[5] https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed September 23, 2025)

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because one of more defendants reside in the Central District of California, and throughout the state of California. Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

15. Plaintiff Potase is a resident and citizen of Mercer County, Pennsylvania.

16. Defendant Intex Recreation Corp. is a corporation headquartered at 4001 Via Oro Ave., #210, Long Beach, California 90810.

## FACTUAL ALLEGATIONS

17. On or around July 9, 2025, Plaintiff purchased Defendants' Clearview Prism Frame Above Ground Pool for approximately $379.70 from Walmart in Hermitage, Pennsylvania.

18. Plaintiff considered Intex a reputable company with a strong reputation for producing safe, reliable products and that this pool would be no different.

19. Until this Recall, Plaintiff has never been informed of any recalls, defects, or potential hazards related to her purchase.

20. On July 21, 2025, Plaintiff along with other consumers of Defendants' Products were notified by CPSC of the Recall and that the affected Products subject to the recall, including the Clearview Prism Frame with support straps that run over the vertical poles (legs) of the pool.

21. As a part of the Recall, CSPC urged consumers of the affected Products to contact Defendants immediately to receive a free repair kit and instructions on how to use the kit.

22. On the Intex website, consumers of affected Products are instructed to submit their pool model number and contact information in order to obtain the repair kit.

23. Consumers who purchased the Products learned through the Recall notice that the Products posed a serious and undisclosed safety hazard. Rather than providing a simple remedy, Defendants placed the burden on consumers to undertake significant corrective measures.

24. Specifically, to address the risks created by the external compression straps, owners must expend substantial time and effort to obtain a repair kit, modify the straps, and fully drain the pools before repairs can be made. These steps impose considerable inconvenience and

additional costs on Plaintiff and Class Members, costs that would not have been incurred had the Products been safe and as represented at the time of sale.

25. Because the Products failed to perform as advertised and fell far short of the reasonable expectations of consumers, Plaintiff and Class Members suffered damages.

26. Although the repair kit is offered at no charge, consumers are required to locate and provide the model number of their pool, request the kit from Defendant, and wait for delivery before undertaking repairs. The repair process itself imposes substantial burdens, as Plaintiff and Class Members must fully drain their pools, install the rope system, and cut away the existing compression straps. These corrective measures require significant time and effort and often result in out-of-pocket costs, including water expenses to drain and refill the pools, as well as potential labor costs for consumers unable to complete the repairs themselves.

27. Because the Products failed to perform as advertised and did not meet the reasonable expectations of consumers, Plaintiff and Class Members suffered damages.

## **CLASS ACTION ALLEGATIONS**

28. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

29. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendants' affected Products, including the Clearview Prism Frame above ground pool (48" or taller), from 2008 to 2025.

> **California Subclass:** All persons within California who purchased Defendants' affected Products, including the Clearview Prism Frame above ground pool (48" or taller), from 2008 to 2025.

30. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

31. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. CSPC reports indicate that the number of Defendants' products subject to the Recall is in the millions, and though the number of individuals who qualify as class members is likely to approach this figure, the exact number is unknown to Plaintiff. For example, some class members may have purchased more than one of Defendants' Products. Nevertheless, the precise number of class members can be readily identified through Defendants' records.

32. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were defective;

b. Whether the defective nature of the Products would be considered material;

c. Whether the defective nature of the Products constitute an unreasonable safety risk;

d. Whether Defendants knew or should have known about the defective nature of the Products;

e. Whether Defendants had a duty to disclose, prior to purchase, the defective nature of the P)roducts to consumers;

f. Whether the defective nature of the products has decreased the value of the Products;

g. Whether Defendants' conduct constitutes an unlawful breach of the implied warranty of merchantability;

h. Whether Defendants' conduct constitutes an unlawful breach of express warranties;

i. Whether Defendants fraudulently omitted material information in its interactions with consumers;

j. Whether Defendants were unjustly enriched;

k. Whether Plaintiff and Class members are entitled to damages and/or other monetary relief.

33. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendants relating to the same course

of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

34. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

35. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendants owed a duty to Plaintiff and the Class and whether Defendants breached its duties predominate over individual questions such as measurement of economic damages.

36. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

37. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

38. The Class may be certified pursuant to Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

39. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

40. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(on behalf of Plaintiff and the California Subclass)**

41. Plaintiff repeats and re-allege the allegations above as if set forth herein.

42. Defendants' business practices, as complained herein, violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

43. Defendants' practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate warranty laws.

44. Defendants' actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

45. Defendants' actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, Defendants' misrepresentations were likely to deceive reasonable consumers. Among other things, Defendants made affirmative misrepresentations regarding the Pools. Specifically, Defendants represented that the Pools were safe and free of life-threatening defects. Defendants had a duty to disclose these material facts because the Pools were unsafe and because Defendants made affirmative representations about the Pools. If Plaintiff had known that the Pools were, in fact, defective and dangerous, Plaintiff would not have purchased the Pool.

46. As a result of Defendants' wrongful business practices, Plaintiff and the Class lost money and have suffered injury-in-fact.

47. Defendants' wrongful business practices present an ongoing and continuing threat and should be enjoined.

48. Plaintiff and the Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiff not have an adequate remedy at law.

49. Accordingly, Plaintiff and members of the Class are entitled to judgment and equitable relief.

**COUNT II**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 ("FAL")**
**(on behalf of Plaintiff and the California Subclass)**

50. Plaintiff repeats and re-allege the allegations above as if set forth herein.

51. Plaintiff brings this claim on behalf of the California Subclass (the "Class" for purposes of this Count).

52. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

53. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

54. As alleged herein, the advertisements, marketing, acts, and practices of Defendants relating to the safety, manufacture testing, and oversight of the Pools misled consumers acting reasonably, as stated above.

55. Plaintiff and Class members suffered injuries in fact as a result of Defendants' actions as set forth herein because they purchased the Defendants' Pools in reliance on Defendants'

false and misleading claims concerning, among other things, the Pools' safety, quality, and manufacturing oversight.

56. Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised and marketed the Pools in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising and marketing.

57. Defendants profited from their sale of the falsely and deceptively advertised and labeled Pools.

58. As a result, Plaintiff and the Class are entitled to damages, equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

59. Plaintiff and the Class were damaged because they would not have purchased Defendants' Pools had they known the true facts regarding its safety and defective condition.

**COUNT III**
**Negligence**
**(on behalf of Plaintiff and the Nationwide Class)**

60. Plaintiff repeats and re-allege the allegations above as if set forth herein.

61. At all times relevant, Defendants had a duty to provide Plaintiff and the other members of the Class with safe Products.

62. Defendants breached this duty by failing to ensure the safety of its Products.

63. As a result of the Recall, Plaintiff and the other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of Defendants' Products.

64. Defendants' breach of its duty caused Plaintiff and the other Class Members damages both proximately and factually.

65. Had Defendants properly designed and manufactured their above-ground pools, and properly examined and tested their Products prior to sale, Plaintiff and the other Class Members would not have been injured and/or damaged as they would not have purchased unsafe products.

66. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

**COUNT IV**
**Breach of Implied Warranty**
**(on behalf of Plaintiff and the Nationwide Class)**

67. Plaintiff repeats and re-allege the allegations above as if set forth herein.

68. The sale of Defendants' Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[6]

69. The defect caused the Products to be unmerchantable because the Products cannot perform their essential functions according to what the average purchaser would reasonably expect.

70. The warranty covers the defect and any damage proximately caused by the defect.

71. Defendants breached the warranty because it was unwilling or unable to remedy the defect within a reasonable time, and any attempt to remedy the defect has been ineffective.

72. Defendants' breach deprived Plaintiff and Class members of the benefit of the bargain.

73. Defendants attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendants knowingly sold a defective product without informing consumers about the defect;

[6] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

b. The time limits contained in Defendants' warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

c. Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants; and

d. A gross disparity in bargaining power existed between the parties.

74. The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

75. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

76. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT V**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Nationwide Class)**

77. Plaintiff repeats and re-allege the allegations above as if set forth herein.

78. Defendants represented to Plaintiff and Class members that their Products were reliable, merchantable, and in good repair.

79. The defect caused the Products to fail to conform to the performance, durability, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

80. Defendants knew or should have known that their Products could not conform to their representations because of the defect.

81. Defendants mispresented, concealed, and omitted material information concerning the defect.

82. The defect and the facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

83. Defendants mispresented, concealed, and omitted material information concerning the defect in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

84. Plaintiff and Class members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing their Products.

85. Plaintiff and Class members would not have purchased the Products if they knew of the defect, or they would have only paid substantially less.

86. Plaintiff and Class members conferred substantial benefits on Defendants by purchasing defective Products at a premium without receiving a product that conformed to Defendants' representations.

87. Defendants knowingly and willingly accepted and enjoyed these benefits.

88. Defendants' retention of these benefits would be inequitable because Defendants obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

89. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members are entitled to restitution.

90. Plaintiff and the Class seek disgorgement of all profits resulting from the overpayments made by Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendants' unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: October 22, 2025

*<u>/s/ Brett R. Cohen</u>*
**LEEDS BROWN LAW, P.C.**
Brett R. Cohen, Esq. (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff and the Putative Class*